RADER, Circuit Judge.
West Interactive Corporation filed a declaratory judgment action against First Data Resources, Inc. West sought a declaration that First Data could not successfully sue it for patent infringement. The United States District Court for the District of Nebraska dismissed West’s action. West Interactive v. First Data Resources, No. CV. 90-0-688, 1991 WL 355059 (July 22, 1991). West appeals from the order of dismissal. Because the record does not show an actual controversy between the parties at the time of West’s complaint, this court affirms the order of dismissal.
BACKGROUND
First Data owns U.S. Patent Nos. 4,845,-739, 4,930,150, and 4,939,773 relating to telephonic interface control systems. First Data has granted non-exclusive licenses to the patented inventions to Call Interactive, a joint venture between FDR Interactive Technologies Corporation and American Telephone & Telegraph Company. FDR Interactive Technologies Corporation is a wholly-owned subsidiary of First Data.
On April 4, 1990, Call Interactive officials met with counterparts of the Semper Barris Company in Omaha, Nebraska. During the meeting Mr. Ronald Katz, a representative of Call Interactive, commented to Mr. Andrew Batkin, President of Semper Barris, about infringement of the ’739, ’150, and ’773 patents. Specifically, according to Mr. Batkin’s deposition, Mr. Katz noted that both West and Semper Barris had infringed the patents. Mr. Katz promised that Semper Barris would have no legal problems if it chose to do business with Call Interactive.
Mr. Batkin informed Mr. Troy Eaden, President of West, of this conversation. The district court characterized this communication as “nothing more than recitation of a hearsay comment.” Further, the district court noted:
Not only is there no allegation that First Data authorized such communication by Call Interactive employees, but there also is no allegation that First Data had any communication whatsoever with West with regard to the patents-in-suit_
West Interactive v. First Data Resources, No. CV. 90-0-688, slip op. at 4-5 (D.Neb. July 22, 1991). Later Mr. Eaden learned that First Data had filed lawsuits in the United States District Court for the Central District of California against 900 Million, Inc., Madmony Productions, Inc., and Avi Madmony for patent infringement. On October 24, 1990, West filed this declaratory judgment action against First Data. West allegedly felt that First Data would also sue it for patent infringement.
On July 22, 1991, after a thorough review of the evidence, the district court dismissed West’s declaratory judgment action:
As previously noted, there has been no contact, directly or indirectly, between the plaintiff and First Data.
There is not any credible indication that First Data intends to bring suit against West. In sum, the Court concludes that the purported apprehension West main *1297 tains it is experiencing on the basis of its allegations is unreasonable.
West Interactive, slip op. at 6-7. West appealed to this court. This court assumes jurisdiction under 28 U.S.C. § 1295(a)(1) (1988) because the district court had jurisdiction under 28 U.S.C. § 1388(a) (1988).
ANALYSIS
Under the Declaratory Judgment Act, a court of the United States may declare the rights of an interested party to an “actual controversy.” 28 U.S.C. § 2201 (1988); Indium Corp. of Am. v. Semi-Alloys, Inc., 781 F.2d 879, 882, 228 USPQ 845, 847 (Fed.Cir.1985), cert. denied, 479 U.S. 820,107 S.Ct. 84, 93 L.Ed.2d 37 (1986). The plaintiff has the burden to show an actual controversy. Jervis B. Webb Co. v. Southern Sys., Inc., 742 F.2d 1388, 1399, 222 USPQ 943, 949 (Fed.Cir.1984). To detect an actual controversy, this court examines two factors:
First, the defendant’s conduct must have created on the part of the plaintiff a reasonable apprehension that the defendant will initiate suit if the plaintiff continues the allegedly infringing activity. Second, the plaintiff must actually have either produced the device or have prepared to produce that device.
Goodyear Tire & Rubber Co. v. Releasomers, Inc., 824 F.2d 953, 955, 3 USPQ2d 1310, 1311 (Fed.Cir.1987). This court applies this objective test to the facts at the time the complaint is filed.* Indium Corp., 781 F.2d at 883.
This test requires the trial court, and this court on review, to examine First Data’s conduct. This court must determine whether the trial court correctly determined that First Data’s conduct did not create in West a reasonable apprehension of suit. In this case, the district court found that First Data undertook no conduct at all towards West, finding, inter alia:
[Tjhere has been no contact, directly or indirectly, between the plaintiff and First Data.
West Interactive, slip op. at 6. This court agrees that this record does not contain enough evidence of conduct of First Data or conduct attributable to First Data to arouse in West a reasonable apprehension of a lawsuit.
The central event which allegedly caused West’s apprehension was the meeting between Call Interactive and Semper Barris. No First Data or West representatives even attended that meeting. Nor does the record show that First Data authorized or advised anyone to make statements at that meeting. Nor does the record show that First Data had any reason to anticipate Mr. .Katz’s oral statements. Rather Mr. Katz, a member of Call Interactive’s negotiating team, stated to Mr. Batkin that infringement of the patents would lead to legal problems. Mr. Katz was not an owner, officer, agent, or even an employee of First Data. Although inventor of the patented devices, he was not even an officer of the joint venture of First Data’s subsidiary, but merely one of its employees.
The district court considered Mr. Katz’s comments and concluded:
Not only is there no allegation that First Data authorized such communication... there is no allegation that First Data had any communication whatsoever with West with regard to the patents-in-suit....
West Interactive, slip op. at 4-5. In sum, West has not shown that First Data undertook any conduct sufficient to support West’s alleged apprehension of litigation. Mr. Katz’s oral statement to Semper Barris in the course of negotiations, with no West *1298 or First Data representatives present, does not give West an objective reason to fear a lawsuit. West need not prove the truth of Mr. Katz’s statements to Semper Barris, but only that those comments in context created a reasonable basis for West to fear litigation. Upon review of all the circumstances, taken together, this court detects no error in the district court’s conclusion that West did not meet that burden of proof.
Although Call Interactive is a non-exclusive licensee of First Data and a joint venture of a First Data subsidiary, the record contains no evidence which would justify our attributing Call Interactive’s conduct to First Data. Mr. Batkin’s affidavit lists Mr. Katz only as an employee of Call Interactive. Without some showing of First Data’s knowledge of and assent to Call Interactive’s conduct, this court cannot attribute Call Interactive’s conduct to First Data. The district court found as a fact that First Data had not even had any indirect contact with West. This court discerns no clear error in that finding. The district court correctly detected West’s failure to show an actual controversy with First Data.
For still another reason, the April 4,1990 meeting did not constitute conduct sufficient to create a reasonable apprehension in West. In a recent declaratory judgment appeal, this court stated:
Amoco replies that Shell had no reasonable apprehension because these alleged “charges” of infringement were merely “jawboning” which typically occurs in licensing negotiations. We agree with Amoco.
Shell Oil Co. v. Amoco Corp., 970 F.2d 885, 888 (Fed.Cir.1992). In Shell Oil, the negotiations were between the declaratory judgment plaintiff and defendant. In this instance, neither West nor First Data were even involved in the negotiations. In this case the negotiation setting and the vagueness of Mr. Katz’s oral statements further emphasize that the April 4 episode was more akin to jawboning Semper Barris than to threatening litigation against West. Thus, the context and content of Mr. Katz’s comments support the district court’s conclusion that West lacked a reasonable basis for apprehension. For this reason as well, the district court correctly determined that “West’s purported apprehension of an infringement suit is unreasonable.”
West argues that First Data’s filings against 900 Million, Inc., Madmony Productions, Inc. and Avi Madmony support the reasonableness of West’s apprehension. The district court correctly noted that a patent owner’s willingness and capacity to enforce its patent rights is pertinent to the inquiry for an actual controversy. Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 737, 6 USPQ2d 1685, 1690 (Fed.Cir.1988). This showing, however, is not always conclusive. Indium Corp., 781 F.2d at 883. The record does not show that First Data invariably pursues litigation against alleged infringers. Indeed, as noted by the district court, the record does not show that First Data even inquired of West about its activities or infringement. Even in light of Mr. Katz’s comments, First Data’s litigation against unrelated third parties did not give West an objective reason to fear litigation. The record in this case supports the district court’s dismissal.
CONCLUSION
The district court correctly determined that First Data did not engage in conduct sufficient to give West a reasonable apprehension of suit. The record does not show conduct of First Data or conduct attributable to First Data sufficient to arouse in West an objective fear of suit before West filed its action. West did not show any actual controversy between First Data and itself. Accordingly, this court affirms the district court’s order dismissing West’s complaint for lack of subject matter jurisdiction.
AFFIRMED.

 West asked this court to consider that First Data filed a patent infringement suit against West on August 20, 1991-many months after West's October 1990 filing. Because this court examines West's declaratory judgment action at the time of its filing, First Data’s subsequent action is irrelevant. Moreover, First Data filed its infringement action only after receipt of an August 6, 1991 letter from West’s Chairman, Gary West, which appeared to admit past infringement:
I am writing at this time to make it perfectly clear that [West] has been utilizing most of the systems and processes described above [referring to the ’739, ’150, and ’773 patents] for the past several years, and intends to continue utilizing those systems and processes indefinitely.